SIXTH NAT. BANK OF CITY OF NEW YORK v. LORILLARD BRICK
WORKS CO. *et al.*

(*Superior Court of New York City, General Term.* May 2, 1892.)

DIVERSION OF ACCOMMODATION PAPER—PURCHASER FOR VALUE—EVIDENCE.

A bank passed the proceeds of discount of diverted accommodation notes to the credit of S., the person accommodated, and took from him two checks, aggregating the amount of the discount, one of which it credited to the account of a firm of which S. was a member, to balance a check deposited by that firm, which came back through the clearing house unpaid, notwithstanding which credit the bank still retained the returned check as a claim against the firm in case the title to the discounted notes should fail. The two checks of S. were never canceled by the bank as paid. *Held* insufficient to show that the bank was a purchaser of the notes for value.

Appeal from jury term.

Action by the Sixth National Bank of the City of New York against the Lorillard Brick Works Company and another. From a judgment for defendants, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before SEDGWICK, C. J., and MCADAM, J.

*F. C. Barlow,* for appellant.   *Richard L. Sweezy,* for respondents.

MCADAM, J.   The action is on a past-due promissory note for $5,000, made by the Lorillard Brick Works Company to the order of James A. Simmons, and indorsed by him and by Jacob Lorillard, and passed before maturity to the credit of said James A. Simmons on the books of the plaintiff. The evidence established the fact that the note was made by Lorillard in the name of the brick company, (he being its president,) and indorsed by him individually, all for the accommodation of Simmons, and that it was diverted by him from the purpose for which it was intended. This made it necessary for the plaintiff to show two things: *First,* that the plaintiff paid value for the paper; *second,* that the plaintiff had no notice that the paper had been diverted. *Comstock* v. *Hier,* 73 N. Y. 269; *Vosburgh* v. *Diefendorf,* 119 N. Y. 357, 23 N. E. Rep. 801; *Bank* v. *Same,* 123 N. Y. 191, 25 N. E. Rep. 402. The plaintiff proved want of notice of the diversion, and the contest narrowed itself down to the single question whether the plaintiff paid value for the paper, within the meaning of that term as declared by the courts. The mere formal discounting of the note, and passing the proceeds to the credit of Simmons upon the books of the bank, did not make the plaintiff a holder for value as against the accommodation maker and indorser of diverted paper. The plaintiff must have actually paid out and parted with the proceeds of the discount before it could acquire an indisputable title thereto. *Bank* v. *Valentine,* 18 Hun, 417; *Platt* v. *Chapin,* 49 How. Pr. 318. The plaintiff concedes the proposition stated, but claims to have paid out the proceeds, within the meaning of that term, as decided by the cases of *Pratt* v. *Foote,* 9 N. Y. 463, and *Mayer* v. *Heidelbach,* 123 N. Y. 332, 25 N. E. Rep. 416. Those cases hold substantially that, where a pre-existing debt has been actually and absolutely extinguished in consideration of the transfer of negotiable paper, the transferee is a holder for value, within the rule protecting such holder against prior equities. In *Pratt* v. *Foote, supra,* it appeared that the Prattsville Bank (owned by the plaintiff) held the defendant's note for $1,000 and interest, payable to and indorsed by Samuel Scudder; that five days before the note matured the defendant called at the bank with Scudder's check on the bank for the amount of the note and interest, (payable on the day the note fell due,) and proposed to the cashier that he should take the check, and give up the note, which the latter declined to do. It was then agreed that the check should be left; that the cashier should pin it to the note; and, if Scudder's account was made good on the

day both fell due, the check would pay the note. Five days after the note matured several sums were credited to Scudder, more than sufficient to meet the check, which was thereupon charged to Scudder's account, and the note posted in the bill book and tickler as paid, and the charge of the check to Scudder was posted from the cash book into the ledger. The maker of the note in that case interested himself in its payment, and could, on the day the credit was made, have withdrawn the money. from the bank on Scudder's check, and returned it in extinguishment of the note, if the bank had required him to do so; and the court held that in legal effect the same result was produced by the mode which the bank adopted. In *Mayer* v. *Heidelbach, supra,* the proposition decided was that, where a depositor in a bank, having sufficient funds standing to his credit, tenders to the bank a check in payment for negotiable paper it has for sale, and the bank accepts the check, charges it against the deposit, cancels and files it as a voucher, and delivers over the paper purchased, the purchaser is a holder for value, the antecedent debt of the bank being *pro tanto* actually and in fact extinguished. In the present instance there was no agreement whereby any other obligation was to be paid with the moneys credited to Simmons, as in the *Pratt Case,* and no delivery up of other securities, as in the *Mayer Case.* Practically all the plaintiff did in the case at bar was to take two checks from Simmons to its own order, together aggregating the amount of the proceeds of the discount. One of these it credited as a nominal bookkeeping payment to the account of John Satterlee & Co., (a firm in which Simmons was a member.) The debit balance of the Satterlee account was produced by the act of the bank in charging against this account a check for $30,000 of some third party, deposited by Satterlee & Co. on January 28, 1890, which came back through the clearing house on the 29th, unpaid. While nominally crediting the Simmons check to the unpaid balance of the Satterlee account, it held on to the return check, thereby retaining its claim against Satterlee & Co., if the Simmons check should not prove good to the bank by reason of failure of the title of the bank to the notes discounted for Simmons' account, thereby negativing any presumption that the crediting of this Simmons check was intended to be an absolute payment of the returned check. The tentative character of the transaction further appears from the fact that the bank never canceled the two Simmons checks upon its iron file, according to the custom of banks respecting paid checks, but kept these checks also in its possession. In short, the plaintiff surrendered nothing on the faith of the note in suit. Its position will not, in a legal sense, be changed for the worse by its failure to recover anything upon it, and it cannot, by its own volition, on any *ex parte* system of credits or debits, conjure up a theory of payment or satisfaction, not manifested or intended by the other parties to the transaction. The bookkeeping entries constitute no parting with value within the rule making a plaintiff a *bona fide* holder, so as to exclude existing equities between the parties. *Insurance Co.* v. *Church,* 81 N. Y. 218; *McQuade* v. *Irwin,* 39 N. Y. Super. Ct. 396; *Buhrman* v. *Baylis,* 14 Hun, 608, and other cases before cited. There was nothing to go to the jury on any of the questions involved, and the verdict in favor of the defendant was properly directed; and the judgment entered thereon, and the order denying the motion for a new trial, must be affirmed, with costs.