Cooke, J.
 

 The issue here is whether a bank is entitled, in the somewhat complex circumstances described, to set off a check payable to its customer, but deposited in an account
 
 *705
 
 with the bank, against that customer’s indebtedness to the bank.
 

 Since at least December, 1962, Dynamics Corporation of America had obtained various loans from Marine Midland Bank-New York. In October, 1971, the then outstanding loans were consolidated into a single unsecured loan, evidenced by a promissory note to Marine Midland, which note, at Dynamics’ request, was renewed from time to time when it became due and payable.
 

 In June, 1972, at Dynamics’ request, Marine Midland renewed the then outstanding promissory note, the renewal being accomplished by canceling the old note and obtaining a new note in the same amount. The new note, dated June 28, 1972, in the principal amount of $4,420,000, plus interest at
 
 6Vz%,
 
 was due and payable by its terms on July 28, 1972.
 

 On the morning of July 28, the bank received a written request from Dynamics for a further extension. Shortly after 10 that morning, a senior vice-president of the bank telephoned Dynamics to advise that the bank would not extend the note and to request that payment be made that day in accordance with the terms of the note. In the course of the conversation, when Dynamics responded that it could not pay the note, the bank advised that it would exercise its right to set off the credit balances in Dynamics’ accounts with it against Dynamics’ indebtedness on the note. Immediately thereafter, the bank confirmed, by means of a telegram, that the balances in the Dynamics accounts with the bank had been offset against Dynamics’ indebtedness to the bank.
 

 One of Dynamics’ accounts at the bank was what is referred to as a "lock-box account” to which were forwarded customer remittance checks to Dynamics’ Waring Products Division. In accordance with an agreement between Dynamics and the bank, the latter was authorized to remove from a post-office lockbox any checks therein, indorse and deposit them in a Dynamics account at the bank, and process them for collection. Among the items removed from the lockbox and deposited in the Dynamics account on July 28, 1972, was a check, dated July 25, 1972, drawn by Graybar Electric Company, Inc., in the amount of $137,989.47 and payable to the order of Dynamics’ Waring Products Division. Although Dynamics contends that this check was seized by the bank in violation of the lockbox agreement, the bank responds that this check and others were removed from the box that day in the ordinary
 
 *706
 
 course of business and deposited in and credited to Dynamics’ account prior to the time the bank set off that account.
 

 After accomplishing the setoff of Dynamics’ accounts, the bank forwarded the July 25 Graybar check, described above, to the drawee bank (the Crocker Citizens National Bank [of California]) for payment in the normal collection process. The check was, however, returned to the bank (Marine Midland) on or about August 1, 1972 with the notation that Graybar had issued a stop payment order on the check, the order having been made on July 31, 1972. On or about August 2, 1972, Dynamics filed a voluntary petition for an arrangement under chapter XI of the Federal Bankruptcy Act (US Code, tit 11, § 701
 
 et seq.).
 

 On August 11, 1972, Graybar drew a check in the amount of $75,095.94 payable to the Dynamics’ Waring Products Division. That check had a notation by Graybar indicating that it replaced the July 25 Graybar check (payment upon which had been stopped) in the amount of $137,989.47, less deductions for two other amounts. Despite this notation, Graybar contends that the August 11 check was never intended to be a substitute for the July 25 check. In this respect, an affidavit indicates that Dynamics’ position is that the obligations for which the July 25 check was sent were never satisfied, and that it did not accept the replacement check in satisfaction of those obligations.
 

 By a letter of September 22, 1972, the bank demanded payment of the July 25 check from Graybar. In this communication, the bank acknowledged that Dynamics was in chapter XI proceedings, but stated that on July 28, 1972 it had applied the July 25 check as a setoff of defaulted obligations of Dynamics to the bank. The letter further stated that counsel had advised that the bank had acquired holder in due course status in regard to that check so that its right to receive payment thereon was not affected by any failure of Dynamics to meet its obligations to Graybar or by any payment which Graybar may have made directly to Dynamics.
 

 On September 5, 1973, the bank commenced suit against Graybar asserting two causes of action. The first alleged that the bank was entitled to payment on the July 25 check as a holder in due course. The second alleged a right to recover damages in the amount of the check on the ground that Graybar, at Dynamics’ request, stopped payment on the check,
 
 *707
 
 thereby wrongfully depriving the bank of funds against which it had exercised a valid right of setoff.
 

 Graybar answered the complaint and at the same time interpleaded Dynamics. In its pleadings, Graybar admitted that it owed the amount of the July 25 check ($137,984.47) to either Marine Midland or Dynamics, and sought judgment that Graybar be authorized to pay said amount into court and that, upon such payment, it be discharged from all liability to either Marine Midland or Dynamics in relation to such instrument.
 

 The bank opposed Graybar’s discharge and moved for summary judgment against it on the check. Dynamics opposed the bank’s motion and cross-moved for summary judgment against the bank for the proceeds of the check and to dismiss the latter’s complaint. Special Term denied the bank’s application and dismissed its complaint. In addition, that court denied Graybar’s request for discharge, and denied Dynamics’ cross motion.
 

 In its opinion, Special Term concluded that on the morning of July 28 when the bank set off the funds in the Dynamics accounts, the Dynamics loan was not in default because default woúld not occur until the close of the business day on which the note was due, and hence that the set off was invalid. The court also reasoned that Graybar’s replacement check (August 11) was payment of the debt for which the stopped check (July 25) was payable, and that therefore Dynamics could have no claim to the July 25 check, noting that the pleadings in the action did not place in issue any claim to sums allegedly due Dynamics by Graybar for purchase payments withheld to indemnify Graybar against payment on the stopped check.
 

 The Appellate Division affirmed. In a memorandum, it commented that Special Term had held that the setoff was improper because the bank prematurely held Dynamics in default on the note, and expressed its view that the setoff was premature in another sense. This was so, it reasoned, because at the time of the setoff (the morning of July 28), the agency relationship regarding the lockbox had not terminated, and hence the debtor-creditor relationship necessarily precedent to the setoff could not have come into existence.
 

 There should be an affirmance. Although the setoff was premature, for the reasons that follow, our holding is based on different grounds from those relied on by the courts below.
 

 
 *708
 
 The bank should not have set off the deposits in the Dynamics account against its loan to Dynamics on the day that such loan was due and payable. In this regard, it is acknowledged that the Uniform Commercial Code does not unambiguously resolve the issue. The Uniform Commercial Code provides that in the case of a time instrument a cause of action does not accrue until the day after maturity (Uniform Commercial Code, § 3-122, subd [1], par [a]). Although the term "action” is defined as including a setoff, this definition appears in the context of an " 'Action’ in the sense of a judicial proceeding” (Uniform Commercial Code, § 1-201, subd [1]). For this reason, the bank urges that since its setoff is a form of remedial self-help, the Uniform Commercial Code’s pinpointing of when a cause of action accrues is not determinative of when a nonjudicial remedy may be utilized. Despite this, it should be held that the setoff was premature on July 28.
 

 The pre-Uniform Commercial Code decisions relied on by the bank are also not dispositive of this issue. Of course, those holdings establish that a bank has a right to set off the accounts of a borrower against the matured indebtedness of that borrower (see
 
 Straus v Tradesmen’s Nat. Bank of N. Y.,
 
 122 NY 379, 382-383;
 
 Meyers v New York County Nat. Bank,
 
 36 App Div 482, 484; see, also,
 
 Sandler v United Ind. Bank,
 
 23 AD2d 567, 568). These cases, however, did not involve the precise question raised now—whether a bank must wait to exercise its right of setoff until the day following the day on which a time instrument is due and payable.
 

 We hold that the rule should be that the bank’s right of setoff may not be exercised until the day after maturity of a time instrument. Furthermore, the bank’s arguments that the setoff is merely provisional and may be reversed if the debt is paid on the due date is beside the point. The effect of allowing a setoff on the day a loan matures can only be disruptive and gives the bank an advantage over competing claimants to the fund, an advantage not afforded in the case of judicial remedies under the Uniform Commercial Code. As a matter of commercial policy, the rule should be that all remedies, including a self-help remedy in the form of a setoff, cannot be exercised until there is a default, meaning that a setoff cannot be made until the day following the day on which the obligation is due and payable.
 

 Although a bank acts prematurely when it sets off an amount from a borrower’s account on the day a loan to that
 
 *709
 
 borrower matures, that rule does not appear to be dispositive under the circumstances presented here. This is not a situation where a premature setoff conflicts with the claim of a third party made against the account on the same day as the setoff (compare
 
 Bethlehem Acceptance Corp. v Newman Motor Co.,
 
 230 Pa Super 441). Here, assuming the setoff was accomplished on the morning of Friday, July 28, a fact the bank disputes, the competing claim of Graybar in the form of a stop payment order did not occur until Monday, July 31, and notice was not received by the bank until August 1 at the earliest. Thus, even though the setoff was premature on the 28th, for purposes of a competing claim to the fund, the setoff arguably became operative on the next day, Saturday, July 29 —which was prior to the stop payment order. Accordingly, under the circumstances of this case, the bank’s acting prematurely would not necessarily be dispositive of the question of whether it is or is not entitled to payment on the check.
 

 The proper resolution of this matter turns on the nature of the fund against which the bank seeks a setoff. This is not like the usual situation where a bank sets off funds that are already on deposit in an account, although here such funds were set off. The disputed fund is an additional amount represented by a check which was indorsed and deposited by the bank in the account against which, and on the same day that, the bank set off its loan against that account. Since the lockbox agreement authorized the bank to indorse checks for deposit in the account, under this arrangement the bank appears to have acquired the status of a "holder” of the check (see Uniform Commercial Code, § 1-201, subd [20]; § 4-205, subd [1]; § 3-202, subd [1]; see, also,
 
 Long Is. Nat. Bank v Zawada,
 
 34 AD2d 1016). On this point, Dynamics contends that under the Uniform Commercial Code the bank was merely an agent for collection of the check (see Uniform Commercial Code, § 4-201, subd [1]). The bank’s response to this contention is that pursuant to subdivision (1) of section 4-201 "the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item
 
 are subject to
 
 rights of a collecting bank such as those resulting from outstanding advances on the item and
 
 valid rights of set-off”
 
 (emphasis supplied). As to Dynamics’ contention, the fact that it continued to be the owner of the check is not inconsistent with the bank’s status as holder. The bank’s response, however, raises a question as to the validity of its setoff.
 

 
 *710
 
 The bank argues that as a holder it had the right to enforce payment in its own name (§ 3-301). Further, the bank argues that it need not prove that it is a holder in due course since Graybar has stated that it has no defense barring payment, but has resisted the bank’s demand solely on the theory that Dynamics has a competing claim to the instrument (see § 3-302, subd [1], par [c]; § 3-306, subd [a]). The bank states that Graybar may not resist its rights as a holder on this ground because Special Term, as affirmed, held (according to the bank) that "as a matter of law” Dynamics had no valid adverse claim to the check.
 

 The bank’s analysis of the Special Term decision is overstated. That court, in concluding that Dynamics can have no claim to the check, was responding to Dynamics’ cross motion for summary judgment on the check. The court was not determining the issue of whether there was any claim that would defeat the bank’s rights as a holder. It did not determine that Dynamics had no further claims against Graybar, but only that such claims had not been placed in issue by the pleadings. The record reveals that Graybar owed Dynamics additional sums, and that there is at least some dispute between Dynamics and Graybar as to the items for which the replacement check was payment. For purposes of this issue, and in view of the willingness of Graybar to deposit the amount of the disputed check with the court for payment to either the bank or Dynamics, it simply cannot be said that there is no valid claim, by Dynamics. Whether the claim relates to invoices purportedly paid by the replacement check is disputed by Dynamics and under the Uniform Commercial Code this should be a sufficient claim, equitable or otherwise, to allow Graybar to resist payment unless the bank qualifies as a holder in due course (see Official Comment 2, McKinney’s Cons Laws of NY, Book 62
 
 V2,
 
 Uniform Commercial Code, § 3-306).
 

 To qualify as a holder in due course, the bank must show that it took the Graybar check for value, in good faith, and without notice of any defense against or claim to it on the part of any person (see Uniform Commercial Code, § 3-302, subd [1]). The courts below did not reach this issue because it was unnecessary to their resolution of the matter.
 

 As to value, the bank contends that it took the July 25 check for value because under the Uniform Commercial Code "A holder takes the instrument for value (a) to the extent that
 
 *711
 
 * * * he acquires a
 
 security interest in or a lien on the instrument
 
 * * * or (b) when he takes the instrument in
 
 payment of or as security for an antecedent claim
 
 against any person whether or not the claim is due” (Uniform Commercial Code, § 3-303; emphasis added). Further, the bank notes that the Uniform Commercial Code accords to it a "security interest” in a check "to the extent to which credit given for the item is withdrawn or
 
 applied”
 
 (§ 4-208, subd [1], par [a]; emphasis added). Thus, the bank’s position is that, by its setoff, it took the check in payment of its antecedent loan, and also that by applying the credit for the check to the loan, the bank acquired a security interest therein. For these reasons, the bank argues that it has given value under the Uniform Commercial Code (see, also, § 4-209).
 

 Dynamics argues that a bank and its depositor must "bilaterally” agree, either expressly or impliedly, to the creation of a security interest in an item. Examples of an implied agreement are said to be participating in the withdrawal of funds, or applying the credit which the bank has given for the item prior to collection. Furthermore, Dynamics argues, the bank must give value unconditionally and irrevocably by actually extinguishing the depositor’s debt upon receipt of the check, even though not yet collected. Dynamics is thus arguing that under the circumstances presented here the bank has not given value.
 

 A bank, of course, gives value to the extent that a credit given for an item is withdrawn by the party whose account was credited (Uniform Commercial Code, § 4-208, subd [1], par [a]; see, e.g.,
 
 Long Is. Nat. Bank v Zawada,
 
 34 AD2d 1016,
 
 supra).
 
 Value is also given by a holder when it takes a check in payment of, or as security for, an antecedent debt (§ 3-303, subd [b]; see, e.g.,
 
 Kelso & Co. v Ellis,
 
 224 NY 528, 536-537;
 
 American Exch. Nat. Bank v New York Belting & Packing Co.,
 
 148 NY 698, 703). Long before the enactment of the Uniform Commercial Code, however, the entry of a credit on a bank’s books was held not to be parting with value under circumstances manifesting that the pre-existing debt or a part thereof was not, in fact, extinguished in consideration for the item for which the credit was given (see
 
 Sixth Nat. Bank of City of NY. v Lorillard Brick Works Co.,
 
 18 NYS 861, affd 136 NY 667). The basis for that decision was that the bookkeeping entry of the credit was not a parting with value (see, also,
 
 Citizens’ State Bank v Cowles,
 
 180 NY 346, 349; see,
 
 *712
 
 generally, Holders In Due Course—Bank, Ann., 59 ALR2d 1173, § 8, at pp 1195-1197).
 

 These events present somewhat of a hybrid situation in that the bank first gave Dynamics a credit for the Graybar check and then applied this credit, by way of setoff, to Dynamics’ indebtedness to it. A literal reading of the Uniform Commercial Code suggests that under section 4-208 (subd [1], par [a]) and subdivision (b) of section 3-303 the net result of the credit followed by the setoff is that the bank had taken the check for value. The difficulty with this analysis is, however, that the credit given to Dynamics’ account was provisional because the bank could and did reverse the credit after notice of the stop payment order, thereby reinstating that portion of the loan against which the credit was set off.
 

 Considering first the credit given to Dynamics’ account for the Graybar check, it is established that the giving of a provisional credit is not a parting with value under the Uniform Commercial Code. In discussing the notion that it is not necessary to give holder in due course status to one who has not actually paid value, the Official Commentary to the Uniform Commercial Code cites as an illustration "the bank credit not drawn upon, which can be and is revoked when a claim or defense appears” (Official Comment 3, Uniform Commercial Code, § 3-303; see
 
 Bankers Trust Co. v Nagler,
 
 16 AD2d 477; see, also, Brady, Bank Checks [4th ed], § 4.6, p 77).
 

 An exception to the proposition that the mere crediting of an account for a deposited check is not a giving of value is when the credit, though not drawn upon, is available for "withdrawal as of right” (Uniform Commercial Code, § 4-208, subd [1], par [b]). A credit is available for "withdrawal as of right” within a reasonable time after the bank learns of a final settlement in the collection process of the check for which the credit is given (see § 4-213, subd [4], par [a]). Until such final settlement, in the absence of any agreement between the bank and the depositor, the bank should not be viewed as having given value until there is a final payment of the credited check (see White & Summers, Uniform Commercial Code, § 14-5, p 468 [1972]). In this respect, the bank suggests that because there is a dispute over whether it permitted Dynamics to draw on credits for uncollected checks, a question of fact is raised, the resolution of which requires an evidentiary hearing. The record does not, however, reveal any agreement permitting withdrawal by the bank, and the mere
 
 *713
 
 conclusory statements of the bank officers are insufficient to raise a question of fact (see
 
 Semperit of Amer. v Todd Equip. Leasing Co.,
 
 51 AD2d 908, affd 41 NY2d 933). The short of the matter is that the credit given here was not available to Dynamics.
 

 Turning then to the argument that by applying the credit by way of setoff to Dynamics’ indebtedness the bank gave value, the following is relevant. The clearest instance of giving value in this sort of case is where a bank actually extinguishes a debt by, for example, parting with a note in exchange for a check and then seeking to collect on the check (see
 
 Citizens Bank of Booneville v National Bank of Commerce,
 
 334 F2d 257). With respect to subdivision (1) of section 4-208, however, one text has suggested that its purpose was to give "the bank protection in any case in which it is not clear that the bank purchased the item outright, but in which it is clear that the bank has done something, of advantage to the depositor, more than giving the depositor a mere credit on the bank’s books” (Clarke, Bailey & Young, Bank Deposits and Collections [1963], p 56). Here, the bank argues that by applying the credit to Dynamics’ indebtedness it was giving value as contemplated under section 4-208.
 

 This argument should be rejected. To say that the bank was doing something of advantage to Dynamics by applying the credit to that depositor’s indebtedness is to ignore what actually occurred. The bank was merely seeking to protect itself and not giving value, in any traditional sense, or under the Uniform Commercial Code. Since the credit given to the Dynamics account was not, as noted, available to Dynamics, there is no reason for allowing the bank to benefit from this credit, particularly since the bank reinstated that portion of the debt against which the credit was applied upon learning that payment was not to be forthcoming on the check. Under this analysis the bank is in no worse position than any other creditor, and the bank’s unilateral agreement to take the credit for the indebtedness, conditioned on payment of the check for which the credit was given, is recognized for what it was—an attempt to recoup its losses.
 

 This is not to diminish the bank’s right of setoff of mutual debts in a bankruptcy situation (see
 
 Studley v Boylston Bank,
 
 229 US 523;
 
 New York County Bank v Massey,
 
 192 US 138). Nor is this holding intended to suggest that the setoff was impermissible simply because the check was uncollected at
 
 *714
 
 the time of the setoff (see
 
 Bath Nat. Bank v Sonnenstrahl,
 
 249 NY 391). Rather, this determination is based on the conclusion that what the bank did was merely give a provisional credit for the Graybar check. That the bank unilaterally agreed to apply this provisional credit to Dynamics’ indebtedness should not elevate the transaction to the level of those instances where value is considered to be given under the Uniform Commercial Code. Therefore, since the bank did not give value, it is not a holder in due course and cannot recover on the check.
 

 Accordingly, for the reasons stated, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order affirmed.