■ MARINE MIDLAND BANK, N. A., Plaintiff, v PRICE, MILLER, EVANS & FLOWERS et al., Defendants and Third-Party Plaintiffs. CULP & EVANS, Third-Party Defendant. — Judgment granted in favor of plaintiff, with costs. Memorandum: This case is submitted to the court for determination pursuant to CPLR 3222. The issue is whether plaintiff bank became a holder in due course of checks drawn by defendant law firm when, upon receiving the checks from the payee, it stamped them "Credited to the account of the payee herein named. Marine Midland Chautauqua National Bank" despite the fact that the payee had no account with plaintiff and plaintiff was actually cashing the checks for the payee by wiring funds to Oklahoma. We hold that because plaintiff was a bank it was entitled to supply the payee's indorsement under subdivision (1) of section 4-205 of the Uniform Commercial Code and so become a holder in due course entitled to payment from defendant drawer of the checks. The parties have stipulated the following facts: On January 3, 1979, defendant drew two checks totaling $36,906.54 on an account at the First National Bank of Jamestown, payable to Leo Proctor Construction Company, Inc., and delivered the checks to Proctor. On January 4, 1979 an employee of Proctor presented the checks, unindorsed, to plaintiff and requested that $36,906.54 be wire transferred to Proctor's account at a bank in Oklahoma. Plaintiff took the unindorsed checks and stamped each on the reverse side, "Credited to the account of the payee herein named. Marine Midland Chautauqua National Bank" although Proctor has never maintained an account with plaintiff, and plaintiff wire transferred the funds to the Oklahoma bank account as requested. Plaintiff had similarly wire transferred funds to Proctor's accounts at Texas and Oklahoma banks upon presentation of six prior checks. One of the six was unindorsed upon presentment and was similarly stamped by plaintiff. None of those checks were dishonored. The two checks at issue in the instant case, however, were returned to plaintiff by the Oklahoma bank, having been stamped "payment stopped" by the First National Bank of Jamestown. Defendant had stopped payment on the checks immediately upon learning that Proctor was in default on the construction contracts for which the checks were drawn. Plaintiff's timely demands for payment by Proctor and/or by defendant were refused, the Oklahoma bank advising plaintiff that Proctor had filed a petition in bankruptcy. It is also worth noting that earlier, plaintiff had cashed Proctor's payroll checks drawn on the Texas or Oklahoma banks, having been told by the Texas bank that Proctor's credit was good. Plaintiff cashed payroll checks payable to Leo Proctor himself only after verifying with the drawee bank that Proctor had sufficient funds in the account to cover the checks(s). It did not cash one check which Leo Proctor presented, however, upon learning that funds were insufficient. One Proctor payroll check drawn on the Texas bank and deposited by a Proctor employee in an account at plaintiff was returned to plaintiff marked "insufficient funds" and was being held by plaintiff on January 3, 1979. The parties agree that defendant has a valid defense on the checks as against Proctor. By our holding we find that defendant should not be permitted to transfer to plaintiff the loss resulting from Proctor's default on the construction contract with defendant when plaintiff was in no way involved with that contract, had no notice of Proctor's default and paid out funds to Proctor in good faith. Plaintiff's right to recover depends upon whether it was a holder in due course. To establish that it must first establish that it was a "holder" of the check, i.e., a person to whom an instrument has been indorsed (Uniform Commercial Code, § 1-201, subd

[20]). If it was a holder in due course then it is entitled, as a matter of law, to judgment for the amount of the funds it has paid out to the payee before collecting on the check against the drawer who stopped payment (see *Long Is. Nat. Bank v Zawada,* 34 AD2d 1016; see, also, *Bath Nat. Bank v Sonnenstrahl, Inc.,* 249 NY 391). Prior to the passage of the Uniform Commercial Code (the Code), the Court of Appeals held that a tranferor's inadvertent failure to indorse a check prevented the transferee from being a bona fide holder for value, reasoning that that was a special status which required compliance with the technical requisites of the law of negotiable instrument (*Goshen Nat. Bank v Bingham,* 118 NY 349). Article 3 of the Uniform Commercial Code has not changed that result. Subdivision (1) of section 3-302 of the Uniform Commercial Code requires a "holder in due course" first to be a "holder", and "holder" is defined by subdivision (20) of section 1-201 of the Uniform Commercial Code to be a person to whom an instrument has been negotiated by indorsement (see, also, Uniform Commercial Code, § 3-201, distinguishing mere transfer of an instrument from "negotiation"). Plaintiff, as a bank, enjoys a special status, however, under article 4 of the Code. Subdivision (1) of section 4-102 provides that the provisions of article 4 prevail over conflicting provisions of article 3 and subdivision (1) of section 4-205 provides that a "depository bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title". Thus, the bank was not required to prove that Proctor indorsed the checks to it because it is authorized by the Code to supply his indorsement (see *Bowling Green, Inc. v State St. Bank & Trust Co.,* 425 F2d 81; see, also, *Nida v Michael,* 34 Mich App 290; *Pazol v Citizens Nat. Bank of Sandy Springs* 110 Ga App 319; *Marine Midland Bank — N. Y. v Graybar Elec. Co.,* 41 NY2d 703, 709). Furthermore, we do not believe the bank was required to extend provisional credit to the payee, Proctor, pending collection, or else forfeit its rights (see *Long Is. Nat. Bank v Zawada, supra*) or that Proctor's nondepositor status is material to its right to recover in this proceeding. A customer, within the intendment of the Code, includes "any person * * * for whom a bank has agreed to collect items" (Uniform Commercial Code, § 4-104, subd [1], par [e]). The bank agreed to collect the checks here for Proctor and the stipulated facts establish that doing so was part of a course of conduct between the parties. Judgment is granted to plaintiff against defendant Price, Miller, Evans & Flowers for $36,906.54, with interest. All concur, except Callahan and Schnepp, JJ., who dissent and vote to grant judgment to defendant in the following memorandum.

Callahan and Schnepp, JJ. (dissenting). We do not agree that article 4 lends support to plaintiff's claim that it is a "holder" of the checks and thus a "holder in due course". Plaintiff argues that since subdivision (1) of section 4-205 empowered it, as a depositary bank, to supply its customer's indorsement, no indorsement whatever is necessary to qualify it as a "holder" of the checks and permit it to sue the drawer without first obtaining the indorsement of its transferor. The purpose of the indorsement power is to facilitate the check collection process by relieving banks of the necessity of returning items for indorsement (Uniform Commercial Code, § 4-205, Comment 1). It permits a drawee bank to pay a check presented by a collecting bank without the customer's indorsement. The checks in this case, however, were not dishonored by the drawee bank because of the lack of the customer's indorsement, but because of the stop payment order. Plaintiff does not seek to collect the checks through regular banking channels and within the bank collection system which is regulated by article 4, but rather seeks, as a holder in due course, to recover their proceeds from the drawer under article 3. Section 4-209 provides that a bank may become a holder in due course if it complies "with the

requirements of section 3-302 on what constitutes a holder in due course". Under article 3, a transferee without indorsement is not a holder and cannot be a holder in due course (Uniform Commercial Code, § 1-201, subd [20]; §§ 3-201, 3-302, subd [1]). Plaintiff, therefore, never acquired holder in due course status simply because it was not a holder of the checks without Proctor's indorsement. Any indorsement that plaintiff was authorized to supply (see Uniform Commercial Code, § 4-205, subd [1]) was for the limited purpose of collecting the item from the drawee bank and not for the purpose of taking the item as a holder. Although it has been suggested that a bank can use its indorsement power pursuant to subdivision (1) of section 4-205 to become a holder (see *Marine Midland Bank — N. Y. v Graybar Elec. Co.*, 41 NY2d 703, 709; *Investment Serv. Co. v Martin Bros. Container & Timber Prods. Corp.*, 255 Or 192; *Pazol v Citizens Nat. Bank of Sandy Springs,* 110 Ga App 319), plaintiff never exercised this power. It acknowledges that the stamp it used was inappropriate and mere surplusage and does not contend that the legend stamped on the backs of the checks qualifies it as a "holder". Even if we were to agree that plaintiff can supply Proctor's indorsement under article 4 to become a "holder" under article 3, we cannot sanction its supplying an inappropriate indorsement to acquire that status. Finally, the course of conduct between the parties cannot govern the determination of this issue and contravene the clear statutory language governing negotiable instruments. Accordingly, we would grant judgment to the defendant dismissing the action. (Submitted controversy.) Present — Simons, J. P., Callahan, Denman, Moule and Schnepp, JJ.