41 B.R. 701 (1984)
In the Matter of Mary Ellen HECHT, M.D., formerly d/b/a The Hecht Group, Debtor.
Albert TOGUT, as Trustee in Bankruptcy for Mary Ellen HECHT, M.D., formerly d/b/a The Hecht Group, Plaintiff,
v.
CHEMICAL BANK, Defendant.
Bankruptcy No. 82 B 10438, Adv. No. 83-5489A.
United States Bankruptcy Court, S.D. New York.
August 2, 1984.
*702 Albert Togut, New York City, for trustee; Kenneth Coleman, New York City, of counsel.
Meiselman, Boland, Reilly & Pittoni, Mineola, for Chemical Bank; Richard Nigro, New York City, of counsel.

DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT REGARDING SETOFF
BURTON R. LIFLAND, Bankruptcy Judge.
This adversary proceeding was commenced by the Chapter 7 trustee of the Estate of Mary Ellen Hecht, M.D. The trustee seeks to recover $87,800.08 plus interest from Chemical Bank ("Chemical"), the defendant in this action. Prior to Dr. Hecht's bankruptcy petition, Chemical set off funds in Dr. Hecht's checking account against certain promissory notes owed by Dr. Hecht to Chemical. The trustee now alleges that Chemical "improved its position" within the meaning of Section 553(b) of the Bankruptcy Code, and seeks to recover that portion of the setoff which represents the alleged improvement in position.
Chemical has interposed an answer and moves for summary judgment dismissing the trustee's complaint. The trustee has cross-moved for summary judgment. For the reasons set forth below, this court denies Chemical's motion for summary judgment and grants the trustee's motion for summary judgment.
Dr. Mary Ellen Hecht filed a Chapter 7 petition on March 8, 1982. On April 15, 1982, Albert Togut was appointed as permanent trustee of this estate ("the trustee"). Prior to the filing of the petition, Dr. Hecht was doing business as "The Hecht Group", an unincorporated association whose purpose was to provide second surgical opinions. The course of events which led to Chemical's exercise of its asserted right of set-off are as follows:
Commencing on December 16, 1980 and continuing until October 27, 1981, Dr. Hecht obtained a total of nine loans from Chemical. The loans totalled $200,000 plus interest. Each loan was evidenced by a promissory note payable to Chemical. On September 25, 1981 and October 27, 1981, the outstanding loans were consolidated into two unsecured loans, evidenced by two promissory notes in the amounts of $190,000.00 and $10,000.00 respectively ("the notes").
During this period Dr. Hecht also kept money on deposit at Chemical in a general checking account. On December 8, 1981, ninety days prior to the bankruptcy petition, Dr. Hecht had the sum of $13,416.27 on deposit in this account.[1]
The notes became due and payable on December 15, 1981, 83 days before Dr. Hecht filed her bankruptcy petition. On that date the amount in Dr. Hecht's checking account totalled $101,216.35.[2]
On December 16, 1981, one day after the notes matured, Chemical set off the amount in Dr. Hecht's checking account against the amounts due on the notes. *703 Chemical was left with an insufficiency of $105,093.24. However, had Chemical set off these amounts on December 8, 1981, ninety days before the filing of the bankruptcy petition, Chemical would have had an insufficiency of $191,919.01. The trustee claims that under Bankruptcy Code Section 553(b), Chemical's right of setoff is limited to the amount Chemical would have recovered had the setoff occurred ninety days before the bankruptcy petition was filed. Therefore, by waiting until December 16th to exercise its right of setoff, Chemical improved its position by the amount of $86,825.77, representing the difference between the insufficiency which existed on December 16, 1981 and the insufficiency which existed on December 8, 1981.[3]
It is Chemical's position, however, that because the notes did not become due until December 15, 1981, there was no mutual debt, as defined in section 553(b) of the Code, prior to that date. Therefore there was no right of setoff until that date, and hence no insufficiency could be calculated prior to that date. In other words, Chemical argues that "the first date during the ninety days immediately preceding the date of the filing of the petition on which there is an insufficiency," 11 U.S.C. § 553(b)(1)(B), was December 15, 1981, the day before the setoff actually occurred.
The trustee contends that Chemical's interpretation of the "mutual debt" requirement of Section 553(a) to require maturity is erroneous. The trustee argues that the maturity date of the notes is irrelevant to the trustee's right to recover under Section 553(b) because section 553(a), which grants the right of setoff to creditors, allows a creditor to setoff against any "claim of such creditor against the debtor," 11 U.S.C. 553(a), regardless of whether such claim is "mature or unmatured," as that term is defined in Section 101(4) of the Code.
A careful reading of the Bankruptcy Code demonstrates the merits of the trustee's argument. Section 553 of the Code provides in pertinent part:
(a) . . . this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .
(b)(1) . . . if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of
(A) 90 days before the date of the filing of the petition; and
(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such a claim.
Thus, Section 553(a) allows a creditor to offset a mutual debt owed by the creditor to the debtor against a claim of the creditor against the debtor, so long as these mutual debts arose before the commencement of the case[4], and so long as the setoff is valid under state law.
*704 In contrast, Section 553(b) represents a conscious decision by Congress to restrict the right of setoff under state law and to treat its exercise as a preference under certain limited circumstances, for the benefit of other unsecured creditors of the debtor. This Congressional intent is aptly expressed by Collier as follows:
[S]ection 553 is not intended to enlarge the doctrine [of setoff] or to permit a setoff when the general principles of legal or equitable setoff did not previously authorize it. In fact, what is evident on comparison of § 553 to its predecessor, Section 68 of the Chandler Act, is that the earlier setoff provision is now considered to have been too broad. The result was that in too many cases, certain creditors received a preference to the detriment of other creditors and the debtor's estate. Consequently, § 553 has restricted the right of setoff beyond what was done in earlier acts, and contains restrictions somewhat similar to those found in the preference section.
4 Collier ¶ 553.02 at 553-9 (1979).
Accordingly, Section 553(b) limits the right of a creditor to "improve his position" based upon the setoff of a mutual debt within the ninety day period preceding the filing of the bankruptcy petition. Under the so-called "improvement in position" test, which is derived from the [Code's] preference section,
"any increase during the three months before bankruptcy in the amount of the debt owing by the creditor to the debtor would not be permitted to be offset. In the bank context, for example, if a debtor had on deposit $5,000 three months before the filing of the petition and $8,000 on the date of filing, then only $5,000 could be offset."
H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 185 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6145. The trustee is thus permitted under this subsection to recover the amount by which the insufficiency on the date of setoff is less than the insufficiency would have been had the setoff occurred ninety days before the filing of the bankruptcy petition or on the first day after the ninetieth day on which there was an insufficiency. See e.g., In re Duncan, 10 B.R. 13, 16 (Bankr.E.D.Tenn.1980); In re Ohio-Erie Corporation, 22 B.R. 340, 342 (Bankr.N.D.Ohio 1982). See generally Ahort, Bank Setoff under the Bankruptcy Reform Act of 1978, 53 Am.Bankr.L.J. 205 (1979). As used in Section 553(b), the term "insufficiency" can be simply defined as the debt still owed by the debtor to the creditor after setoff.
The following passage from the Collier Treatise illustrates how the improvement in position test is applied:
[S]uppose that on the 90th day prior to bankruptcy the debtor comes to the bank and receives a $12,000 loan to be repaid in 3 monthly installations of $4,000. The debtor opens a bank account on the 90th day before bankruptcy with a balance of $2,000. Thus the insufficiency on the 90th day before bankruptcy is $10,000. On the 60th day before bankruptcy the debtor pays $4,000 on the loan reducing the debt owed to the bank to $8,000. . . . On the 30th day before bankruptcy the debtor pays only $3,000 on the loan due to cash flow problems. On the 29th day before bankruptcy the bank declares an event of default, accelerates the debt and setoff [sic] the $2,000 in the bank account. The insufficiency on the date of setoff was $3,000 ($5,000-$2,000). The improvement in position is $7,000 ($10,000-$3,000). *705 4 Collier on Bankruptcy ¶ 553.08 at p. 553-46.
In the instant case, Dr. Hecht owed $205,335.28 on the notes on December 8, 1981. The amount in her checking account on that date totalled $13,416.27. Thus, the insufficiency on that date totalled $191,919.01. On December 16, 1981, Dr. Hecht owed $206,309.59 on the notes.[5] The amount in Dr. Hecht's checking account on that date totalled $101,216.35. Hence, the insufficiency on the date of the setoff equalled $105,093.24. As in the above example, the insufficiency on the date of setoff was less than the insufficiency on the ninetieth day before the filing of the petition. Therefore the trustee is entitled to recover the difference between the insufficiencies, notwithstanding the fact that the debt owed on the notes was unmatured on December 8, 1981.
Chemical's argument that an insufficiency could not be calculated on December 8, 1981 because the notes had not matured on that date is totally inapposite. It is true that under New York law, a bank's right to setoff time instruments may not be exercised until the day after the time instrument matures. Marine Midland Bank of New York v. Graybar Electric, 41 N.Y.2d 703, 706, 709, 395 N.Y.S.2d 403, 407, 405, 407, 363 N.E.2d 1139, 1141, 1142 (1977); Uniform Commercial Code § 3-122(1)(a) (with regard to time instruments a cause of action does not accrue until the day after maturity). However, in the case at bar it is undisputed that Chemical acted properly in setting off the debts on December 16th. The issue before this Court is not the point at which setoff was proper, but rather whether an insufficiency can be calculated as of December 8, 1981 despite the fact that the debt had not matured as of that date. A careful reading of the Code definitions of "claim," "debt," and "insufficiency" show that the only logical answer to this question is an affirmative one.
"Insufficiency" is defined in Section 553(b)(2), supra, as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim." 11 U.S.C. § 553(b)(2). Section 101(4) of the Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. . . ." [emphasis added]. The Code definition of "debt" is "liability on a claim." 11 U.S.C. § 101(11). In applying the Code definitions of "claim" and "debt" to the Code definition of "insufficiency" in section 553(b)(2), the only logical conclusion is that an insufficiency is the amount by which a creditor's right to payment, regardless of whether such right is matured or unmatured, exceeds a debt the creditor owes to the debtor.
Indeed, this is the view which is taken in the Collier Practice Guide, which states that,
By virtue of the Code's elimination of the concept of provability, its broad definition of the terms `debt' . . . and `claim' . . ., its allowance of contingent or unmatured claims . . . and its provision for the estimation of contingent or unliquidated claims . . ., the setoff of unmatured, unliquidated and contingent claims should be permissible under the Code.
4 Collier Bankruptcy Practice Guide ¶ 66.05[3] at 66-12-13.
Thus, while under New York Law a bank may not exercise its right of setoff until after the maturity date of the loan, nevertheless once the setoff has been validly exercised an insufficiency may be calculated as of a date before the loan has matured, and the trustee may recover this insufficiency despite the fact that an actual setoff of those amounts would be prohibited on that date.
In re Duncan, supra, presents a factual situation analogous to the instant case. In In re Duncan, the debtor borrowed money *706 from the defendant bank in February 1980, giving in exchange a promissory note payable in monthly installments commencing in March 1980 and maturing in February 1981. When no payments were made, the bank set off the balance in the debtor's bank account against the debtor's promissory note. The court, in determining whether the setoff created an improvement in the bank's position, calculated an insufficiency on the date the loan was made, despite the fact that the loan was not to mature until a year later. Thus, as in the case at bar, the court was able to determine the amount of the insufficiency before the maturity date of the loan.
Similarly, in the instant case the insufficiency can be calculated as of the ninetieth day prior to bankruptcy, irrespective of the fact that the debt did not actually mature until seven days later.
It is clear that in drafting Code Section 553(b) Congress intended to limit the amount a creditor can offset under state law. Since federal bankruptcy law is preemptive, such Congressional intent must take precedence over any state law to the contrary:
When the language of an avoiding power established under Federal bankruptcy law "is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms," Central Trust Co. v. Official Creditors Committee of Geiger Enterprises, Inc., 454 U.S. 354, 102 S.Ct. 695 [70 L.Ed.2d 542] (1982), and [state law] policy arguments against its enforcement are not relevant.
In re Richardson, 23 B.R. 434, 448 (Bankr. D.Utah 1982). See also In re Frank, Bankruptcy L.Rep. (CCH) ¶ 69,830 (1984).
This Court thus finds that the fact that the debt to Chemical was unmatured ninety days prior to the petition does not justify a conclusion that an insufficiency cannot be calculated at that point. If this Court were to hold otherwise, the basic purpose behind 11 U.S.C. § 553(b), to limit the improvement in one creditor's position and thus benefit all unsecured creditors, would be frustrated.
Accordingly, Chemical's motion for summary judgment is denied and the trustee's cross-motion is granted.[6]
It is so ordered.
NOTES
[1] Dr. Hecht maintained a second Chemical checking account containing $237.00. According to the record, Chemical did not set off the amount in this account.
[2] This increase in the amount in Dr. Hecht's checking accounts was principally caused by the deposit by Dr. Hecht, of $78,588.95, the proceeds of the sale of her vacation residence.
[3] The trustee actually alleges that Chemical improved its position by $87,800.08. However, the Court holds that this figure is erroneous, as it results from the trustee's failure to accurately calculate the amount of interest which had accrued as of December 8, 1981 as well as the trustee's inclusion of a second checking account in the December 8, 1981 calculations.
[4] The "mutual debt" requirement is an extension of Section 68 of the former Bankruptcy Act. See Wolf v. Aero Factors Corp., 126 F.Supp. 872 (S.D.N.Y.1954). A debt is considered mutual when it is between the same parties in the same right or capacity. In re T & B General Contracting Inc., 12 B.R. 234, 238 (Bankr.M.D.Fla.1981); In re Brendern Enterprises, Inc., 12 B.R. 458, 459 (Bankr.E.D.Pa.1981); In re Dartmouth House Nursing Home, Inc., 24 B.R. 256, 264 (Bankr.D. Mass.1982); 4 Collier on Bankruptcy ¶ 553.04 at 553-22. In addition, both debts must be owing when the bankruptcy petition is filed. Framingham Winery, Inc., 7 B.R. 624, 627 (Bankr.D. Mass.1980); In re Jefferson Mortgage Co., Inc., 25 B.R. 963, 971 (Bankr.D.N.J.1982).

The requirement of mutuality of debt is satisfied in the instant situation. Both debts were incurred by the same parties in their individual capacities. A deposit in a bank account creates a debt owed to the depositor by the bank, Katz v. First Nat. Bank of Glen Head, 568 F.2d 964 (2d Cir.1977), just as a loan by a bank to its depositor creates a debt owed to the bank by the depositor. Thus, the debt owed by Chemical to Dr. Hecht is represented by the balance in Dr. Hecht's checking account, and Chemical's claim against Dr. Hecht is represented by Dr. Hecht's promissory notes.
[5] The increase in the amount due on the notes on December 16, 1981 over the amount due on December 8, 1981 was caused by the accrual of interest on the notes.
[6] The trustee alleges as an alternative ground for recovery that Chemical's motion for summary judgment must be denied since a material question of fact exists with regard to whether certain funds were deposited for the purpose of obtaining a right of setoff. See Katz, supra, 568 F.2d at 968. Because this Court finds in favor of the trustee's cross-motion for summary judgment it is unnecessary to address this alternative theory.